# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **C.R.**

**No. 19-0792** (Kanawha County 18-JA-216)

**FILED**

**April 6, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.R., by counsel Adam Campbell, appeals the Circuit Court of Kanawha County's July 30, 2019, order terminating his parental rights to C.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth G. Kavitz, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for an improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, the DHHR filed a child abuse and neglect petition alleging that the mother's parental rights to her older children were previously terminated on the basis of substance abuse, failure to provide for the children, and failure to participate in services. The DHHR further alleged that she failed to remedy those conditions and attempted to evade West Virginia Child Protective Service workers by traveling to Tennessee to give birth to C.R. The DHHR alleged that petitioner called the authorities and disclosed that the mother was "losing her mind" and hiding in the woods with the three-month-old child.[3] According to the DHHR, the child was caked in mud

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner does not challenge the termination of his parental rights on appeal.

1

when found and a hair was wrapped so tightly around one of her toes that she required medical intervention.

The DHHR amended the petition in July of 2018 to include petitioner as a respondent as he was named the father on the child's birth certificate. The DHHR alleged that petitioner's parental rights to other children were previously involuntarily terminated and that his circumstances since that termination remained unchanged.[4]

On October 2, 2018, the circuit court held the adjudicatory hearing and petitioner appeared in person and by counsel. The DHHR presented testimony from petitioner's case worker that petitioner was ordered not to have contact with the mother in his prior case. The worker testified that petitioner and the mother had a history of failing to protect their children from harm and that the worker did not believe those circumstances had changed. The worker testified that she had not spoken with petitioner since the filing of this petition and that no services were offered to him. However, the worker explained that petitioner initially participated in services in his previous case, but, there was "no change or likelihood that that change would take place anytime in the near future" because petitioner would not separate from the mother. Petitioner testified that the child was conceived in April of 2017, prior to the circuit court's termination of the mother's parental rights in the previous case. Further, he denied that the mother was hiding in the woods as alleged and asserted that the police found her at his home. Petitioner also denied that the child was muddy or that her toe required medical intervention. Petitioner testified that he would comply with services if offered by the DHHR and asserted that he would not test positive for illicit substances.

Following the presentation of evidence, the DHHR moved the circuit court to adjudicate petitioner as an abusing parent and to accelerate disposition and terminate his parental rights that same day. Ultimately, the circuit court granted the DHHR's motion and terminated petitioner's parental rights by its October 18, 2018 order, which petitioner appealed. Upon review, this Court found the circuit court erred in holding an accelerated dispositional hearing without providing proper notice to petitioner and remanded the case. *See In re C.R.*, No. 18-1011, 2019 WL 1766175 (W. Va. April 19, 2019)(memorandum decision).

In July of 2019, the circuit court held a properly noticed dispositional hearing, wherein petitioner moved for an improvement period. The DHHR objected and presented testimony that petitioner failed to fully participate in or benefit from services in his prior proceeding. A DHHR worker testified that petitioner was reunified with his children for a brief time in the prior proceeding, but continued to associate with the mother who was not permitted contact with the children. According to the DHHR worker, petitioner lied about his relationship with the mother "for months." The DHHR worker explained that petitioner was reunified with the children a second time, but "he had them sleeping on . . . deplorable couches at his mother's house while he was gallivanting with [the mother] for days."

---

[3]Petitioner was referenced as a "potential father" in the initial petition, but not added as a respondent at that time.

[4]This Court affirmed petitioner's prior termination of parental rights in *In re D.R. and R.R.-1*, No. 18-0496, 2018 WL 6040686 (W. Va. Nov. 19, 2018)(memorandum decision).

The DHHR worker asserted that the mother continued to abuse controlled substances and petitioner continued to associate with her. In April of 2019, one of petitioner's children provided the worker with "video footage of [the mother acting] . . . belligerently high" in the living room of the child's relative foster placement. The DHHR worker testified that, on another occasion in May of 2019, one of petitioner's children called her from his relative foster placement "crying his eyes out and screaming." In the background of this phone call, the DHHR worker could hear petitioner and the mother "arguing" with the child's caretaker and heard petitioner tell the child to "hang up the phone."[5] Based on these events, the worker believed that petitioner's circumstances had not changed from the prior proceeding in which his parental rights were terminated. Accordingly, she recommended termination of petitioner's parental rights to C.R. Petitioner testified that he had not associated with the mother since this Court remanded his case and that he was currently employed. In regard to the incident in May of 2019, petitioner denied that he was there.

Ultimately, the circuit court denied petitioner's motion for an improvement period and terminated his parental rights. The circuit court found that petitioner continued to have contact with the mother and engage in domestic violence with her. As a result, the court found that petitioner had not remedied the conditions that led to his prior termination of parental rights. The court concluded that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected and that termination was in the child's best interests. The circuit court memorialized its decision in its July 30, 2019, order. Petitioner now appeals that order.[6]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

---

[5]As a result of petitioner's consistent interference in his children's relative foster placement, the children were necessarily moved and struggled to find permanent placement.

[6]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in her current foster placement.

On appeal, petitioner argues that the circuit court erred by denying his motion for an improvement period. Petitioner asserts that, due to the aggravated circumstances of his prior termination, the DHHR failed to provide him with any services. Therefore, petitioner argues that he was not afforded the opportunity to demonstrate that he could provide for his infant child. We find no merit to this argument.

Pursuant to West Virginia Code § 49-4-604(b)(7)(C), the DHHR was not "required to make reasonable efforts to preserve the family" because "the parental rights of [petitioner] to another child [had] been terminated involuntarily." Therefore, the DHHR was justified in not affording petitioner services throughout the proceedings. However, petitioner's prior termination of his parental rights was not dispositive as to an improvement period. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004).

Here, petitioner failed to show that he was likely to fully participate in or benefit from an improvement period. The evidence showed that petitioner was afforded services for a substantial period of time during his prior abuse and neglect proceeding, but could not remedy the conditions of abuse and neglect, specifically the issue of domestic violence with the mother. During that proceeding, petitioner continued to associate with the mother after the termination of her parental rights and was found to be dishonest about that continued association. In this case, the evidence supported the court's finding that the mother continued to abuse controlled substances and petitioner continued to associate with her. More concerning, petitioner continued to interrupt his children's lives by engaging in domestic arguments in their relative foster placement, despite the termination of his parental rights to those children. Although petitioner denied that he continued to associate with the mother, we have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Clearly, the circuit court found petitioner to not be credible regarding his association with the mother.

Finally, as petitioner acknowledges on appeal,

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

4

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Considering the child's young age, the circuit court was not required to grant petitioner an opportunity to "demonstrate his compliance," as petitioner argues on appeal. The evidence provided showed petitioner exhibited a pattern of participation in services without substantial improvement and a high chance of continued association with the mother, which would expose one-year-old C.R. to substance abuse and domestic violence. Accordingly, we find no error in the circuit court's denial of petitioner's motion for an improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison